UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN LABORERS' PENSION
FUND, et al.,

    Plaintiffs

v.

RITE WAY FENCE, INC., EUGENE
ZAPCZYNSKI and MARK ZAPCZYNSKI,

    Defendants.
_____/

Case No. 08-12996

Hon. Lawrence P. Zatkoff

MICHIGAN LABORERS' PENSION
FUND, et al.,

    Plaintiffs,

v.

MARX CONTRACTING, INC., EUGENE
ZAPCZYNSKI and MARK GRUNDER,

    Defendants.
_____/

Case No. 08-13724

Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on September 10, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

Presently before the Court are two dispositive motions:

    A.    Motion for Partial Summary Judgment filed by Plaintiffs (Docket #23 in
Case No. 08-12996).

B.  Motion for Partial Summary Judgment filed by Plaintiffs (Docket #16 in Case No. 08-13724).[1]

The parties have fully briefed both Partial Summary Judgment Motions, though they agree that the legal issues in the Partial Summary Judgment Motions are identical and the factual issues are essentially the same. The Court also has been presented with two other motions: Defendants' Motion to Amend/Correct Answer to Complaint to Add Affirmative Defenses (Docket #28) and Plaintiffs' Motion for Contempt and for Default Judgment (Docket #35). The Court finds that the facts and legal arguments pertinent to all of the Motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that all of the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Court: (1) DENIES both of Plaintiffs' Motions for Partial Summary Judgment, (2) DENIES Defendants' Motion to Amend/Correct Answer to Complaint to Add Affirmative Defenses, and (3) ORDERS Defendants TO SHOW CAUSE why Plaintiffs' Motion for Contempt and for Default Judgment should not be granted.

## II. BACKGROUND

**A. The Parties and the Type of Work**

The Michigan Laborers' Pension Fund, Michigan Laborers' Health Care Fund, Michigan Laborers' Vacation Fund, Michigan Laborers' Training Fund, Michigan Laborers'-Employers'

---

[1] Defendants have also sought leave to file a sur-reply regarding the motions for partial summary judgment (Docket #29 in Case No. 08-12996). The Court finds that argument set forth therein would not aid in deciding this matter because the Court did not rely on the precipitating arguments set forth in Plaintiffs' reply briefs. Accordingly, the Court DENIES Defendants' motion for leave to file a sur-reply.

Cooperation and Education Trust Fund, and Michigan Laborers' Annuity Funds ("Plaintiffs") are jointly administered, multi-employer fringe benefit funds. Rite Way Fence, Inc. ("Rite Way") and Marx Contracting, Inc. ("Marx") build and install fencing and guardrails. Rite Way and Marx have the same officers (*e.g.,* the president of Rite Way and the vice-president of Marx is Eugene Zapczynski), do the same type of work, are located in the same building in Sterling Heights, Michigan, use the same work force, and signed the same collective bargaining agreement with the Plaintiffs. For these reasons and upon the stipulation of Rite Way and Marx, the cases have been consolidated and Rite Way and Marx are considered the same employer for purposes of this litigation; generally, they will be referred to collectively as "Defendants" herein.

Defendants install fencing and guardrail on highways, roads and parking lots, as well as outside bars and buildings, including public schools and commercial projects. Much of Rite Way's work (40-65%) involves Michigan Department of Transportation (commonly referred to as "M-DOT") projects. At Marx, "almost everything[] is M-DOT." Defendants often are hired by general contractors (such as Posen Construction, John Carlo Construction, and D.J McQuestion) to provide "Highway Construction" work on M-DOT projects. To perform this Highway Construction work, Defendants employ dozens of laborers. The laborers work with the project manager in the morning to find out what they need for the job that day. The laborers then assemble the materials, load the materials onto trucks, fuel and warm up the trucks and drive the materials to and from the job site. The laborers also might move materials in Defendants' yard. When the laborers get to the job site, they remove the old fencing or guard rail and install the new fencing or guard rail.

Plaintiffs have a right to wages and fringe benefit contributions from Defendants for certain hours worked by Plaintiffs' laborers pursuant to the terms of a 2003-2008 collective bargaining

3

agreement executed by Plaintiffs and Defendants ("the CBA"). Defendants have always paid the laborers wages for all work performed, including for: (1) work at the construction job site ("on-site"), (2) work at Defendants' yard or shop ("off-site"), and (3) drive time to and from the job site/Defendants' yard ("drive time"). Defendants also make fringe benefits contributions for hours worked by the laborers, but such fringe benefit contributions historically have been made only for on-site construction work that Defendants believe is covered by the CBA. Defendants have not made fringe benefit contributions for: (a) construction performed at Defendants' yard or shop, (b) drive time, or (c) any work that Defendants do not believe is covered by the CBA. According to Defendants, in previous audits, Plaintiffs have never claimed they were entitled to fringe benefit contributions for this work, nor have Plaintiffs ever filed a grievance over the lack of fringe benefit contributions for off-site work (*i.e.*, shop or yard work).

**B.  The Issues**

Plaintiffs seek to collect unpaid contributions, interest, assessments, fees and costs related to: (1) the January 2006 through August 2007 audit of Rite Way, and (2) the March 2007 through August 2007 audit of Marx. Specifically, Plaintiffs' claim their audit of Rite Way shows that Rite Way failed to make $266,095.27 in unpaid fringe benefit contributions on behalf of laborers (based on more than 24,000 hours of work for which the laborers were paid wages), as follows:

|  | **Hours** | **Contributions Owed** |
| --- | --- | --- |
| 2006 Field | 4,101.25 | $45,172.17 |
| 2007 Field | 1,680.00 | $19,553.56 |
| 2006 NUOT & NUST[2] | 2,008.25 | $21,725.81 |

---

[2]"NUOT" means non-union overtime and "NUST" means non-union straight time.

4

| | | |
|---|---|---|
| 2007 NUOT & NUST | 749.00 | $8,281.72 |
| 2006 Apprentices (Prevailing Wage non-site) | 3,953.00 | $41,867.65 |
| 2007 Apprentices (Prevailing Wage non-site) | 151.50 | $1,653.43 |
| 2006 Drive Time | 4,040.50 | $45,767.91 |
| 2007 Drive Time | 2,347.75 | $26,831.78 |
| 2006 Benefits Due | 3,251.00 | $35,044.72 |
| 2007 Benefits Due | 1,474.00 | $16,630.59 |
| 2006-7 Prevailing Wage | 298.75 | $3,540.91 |
| 2006 Vacation | | $25.02 |

Similarly, Plaintiffs claim the audit of Marx showed that Marx owed $20,293.57 in fringe benefit contributions (based on more than 1,638.75 hours of work).

Defendants do not dispute the numerical accuracy of the two audits and related audit documents, but they maintain that the CBA requires them to make contributions only for covered work physically performed at the construction job site ("on-site"). More specifically, Defendants contend that no fringe benefit contributions are owed for many of the hours Plaintiffs seek fringe benefit contributions, including for: (a) hours worked on projects that did not constitute covered work at all, (b) hours worked at Defendants' facilities (work that Defendants refer to as "field," "yard" or shop work) because the work was not performed on-site,[3] and (c) drive time, *i.e.*, hours

---

[3]According to Defendants' representatives, "field" work is work performed at Defendants' shop (where the office is) or yard (a vacant piece of land where "material equipment" is stored), including building guard rail; moreover, "shop" work, "field" work and "yard" work are labels used by Defendants to describe off-site work for which no fringe benefit contributions were paid.

worked by laborers traveling: (1) from Defendants' facility to the construction site after the laborers worked at Defendants' facility in the morning, (2) between construction sites, or (3) when the laborers returned the vehicles and materials to Defendants' facility at the end of the day.

In their Motions for Partial Summary Judgment, Plaintiffs also seek a ruling that Defendants must make fringe benefit contributions with respect to off-site work, drive time and apprentice work under the collective bargaining agreement entered into by the parties in 2008 (which is currently in effect and shall be until 2013). In their complaints, however, Plaintiffs do not seek any such relief. Accordingly, the Court shall not address this issue.

### III. LEGAL STANDARD

As recently stated by the Sixth Circuit:

> Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, [the court] must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Spees v. James Marine, Inc.*, – F.3d –, Case No. 09-5839, 2010 WL 3119969, at *6 (6th Cir., Aug. 10, 2010).

### IV. ANALYSIS

**A.  Plaintiffs' Motions for Partial Summary Judgment**

Based on the conduct of the parties since the CBA was signed, the Court finds it unnecessary to make a determination whether the language of the CBA should be interpreted in the manner desired by Plaintiffs. Despite entering into and being compensated under the CBA since 2003, Plaintiffs waited five years to claim that they were entitled to fringe benefit contributions for off-site

6

work, drive time and apprentice work. By doing so, the Court concludes that Plaintiffs waived their right to seek, for the first time, the relief they seek in this lawsuit.

"[W]hen a course of conduct establishes by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms, the requirement of mutual agreement has been satisfied." *Quality Products v. Nagel Precision, Inc.*, 469 Mich. 362, 374 (2003).[4] Significantly, it is undisputed that, from the time the CBA was executed in 2003 and continuing until these cases were filed in 2008, Defendants paid wages to Plaintiffs' laborers but did not make fringe benefit contributions to Plaintiffs for off-site work, drive time or apprentice work. During that time, Plaintiffs never complained, filed a grievance or otherwise claimed that they were entitled to fringe benefit contributions for such work. Plaintiffs' actions in conjunction with a 2006 audit reflect that Plaintiffs did not act in a manner consistent with the belief that they were entitled to fringe benefit contributions for off-site work, drive time or apprentice work. With respect to the 2006 audit, Plaintiffs initially claimed that Rite-Way owed them almost $800,000, but Plaintiffs ultimately resolved that audit for about $60,000.

For the foregoing reasons, the Court finds that Plaintiffs waived their right to claim fringe benefit contributions for off-site work, drive time or apprentice work with respect to any work under the CBA. Accordingly, Plaintiffs' Motions for Partial Summary Judgment against Rite Way and Marx are denied.

---

[4]Defendants state that, in 2003, at the inception of their relationship, Plaintiffs' representative, Mark Pulice, and Rite-Way President, Mark Zapczynski, specifically agreed that the CBA only covered Defendants' on-site airport, railroad, and highway and other "Davis-Bacon" work. Plaintiffs argue that any statements of Mr. Pulice constitute inadmissible hearsay, however, any statement by Mr. Pulice is irrelevant to the Court's consideration of this issue.

**B.   Defendants' Motion to Amend/Correct
     Answer to Complaint to Add Affirmative Defenses**

Plaintiffs' complaint in Case No. 08-12996 was filed on July 11, 2008, and Defendants filed their answer to that complaint on September 3, 2008. A scheduling conference was held on December 11, 2008, at which time the discovery cut-off date was set for May 15, 2009. After a stipulated extension was granted by the Court, the discovery cut-off date was extended to June 29, 2009. Defendants' Motion to Amend/Correct Answer to Complaint to Add Affirmative Defenses was not filed until October 22, 2009. The Court finds Defendants' Motion untimely, as it was not filed until: (1) more than a year after Defendants filed their answer, (2) almost a year after Defendants represented at the scheduling conference that they had no amendments to their pleadings, (3) more than three months after the discovery period closed, and (4) approximately a week after the briefing on the motions for partial summary judgment was complete. The Court also concludes that permitting Defendants to amend/correct their answer(s) at this time would be prejudicial to Plaintiffs. For the foregoing reasons, the Court DENIES Defendants' Motion to Amend/Correct Answer to Complaint to Add Affirmative Defenses.

**C.   Plaintiffs' Motion for Contempt and for Default Judgment**

On February 25, 2010, Plaintiffs filed their Motion for Contempt and for Default Judgment based on alleged violations of discovery orders that Defendants stipulated to and/or were signed by Magistrate Judge Virginia Morgan. Defendants have not filed a response to the motion. Based on the prior conduct of the parties during discovery, the Court cannot determine whether the failure to file a response is due to the absence of a defense to the motion or the parties' resolution of the motion. Accordingly, the Court hereby ORDERS Defendants to SHOW CAUSE, in writing, on or

before September 17, 2010, why the Court should not grant the relief requested by Plaintiffs in their Motion for Contempt and for Default Judgment.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs' Motions for Partial Summary Judgment (Docket #23 in Case No. 08-12996/ Docket #16 in Case No. 08-13724) are DENIED. IT IS FURTHER ORDERED that Defendants' Motion to Amend/Correct Answer to Complaint to Add Affirmative Defenses (Docket #28) is DENIED. IT IS FURTHER ORDERED that Defendants SHOW CAUSE, on or before September 17, 2010, why the Court should not grant the relief requested by Plaintiffs in their Motion for Contempt and for Default Judgment.

Finally, IT IS FURTHER ORDERED that the parties and their counsel appear before the Court on October 26, 2010, at 9:30 a.m. for the Final Pre-Trial Conference for this matter.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 10, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 10, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290
